# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| CHRISTIAN NEALON, | ) | Case No. 14-40719 |
| | ) | |
| Debtor | ) | |
| | ) | |
| THERESA MATTHEWS, | ) | Adversary Proceeding |
| | ) | No. 14-4069 |
| Plaintiff, | ) | |
| v. | ) | |
| CHRISTIAN NEALON, | ) | |
| | ) | |
| Defendant | ) | |

### MEMORANDUM OF DECISION

Before the Court are two dispositive motions: a motion requesting summary judgment, filed by plaintiff Theresa Matthews (the "Summary Judgment Motion"), and a motion requesting entry of judgment on the pleadings, filed by the defendant (and debtor in the underlying Chapter 7 bankruptcy case) Christian Nealon (the "Debtor"; the "Motion for Judgment on the Pleadings"). Both motions require this Court to determine whether a prepetition arbitral award has a preclusive effect in the present nondischargeability action and, if not, whether Matthews has sufficiently stated claims for relief under

1

§§ 523(a)(2)(A) and (a)(4) of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code").[1]

I. FACTS AND POSITIONS OF THE PARTIES[2]

In May 2011, Theresa Matthews contracted with Christian D. Nealon Builders, Inc. ("CNB") – a company wholly owned and operated by the Debtor – as a general contractor to oversee extensive construction and renovation work to be done on her home.[3] At the time she executed the contract with CNB, Matthews provided the Debtor with a check in the amount of $101,020.00 (the "Initial Deposit"). The time frame for completion of the work was originally estimated at 6 to 8 months; however, by the spring of 2012, the work was not complete, nor was it ever completed by the Debtor.

---

[1] See 11 U.S.C. § 101 et seq. All references to statutory sections are to the Bankruptcy Code unless otherwise specified.

[2] The following recitation of facts is drawn largely from the complaint filed in this adversary proceeding (the "Complaint"), including the attached exhibits. The Court makes no findings of fact at this juncture and will note the Debtor's disputes with the stated facts only where material to the outcome of the instant motions.

[3] Although Matthews technically contracted with CNB, the Debtor, as the sole owner and principal of CNB, is jointly and severally liable for the claims that eventually arose between the parties and for purposes of the dischargeability proceeding *sub judice*. See, e.g., Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc., 764 F.2d 928, 938 (1st Cir. 1985) ("it is settled that a corporate officer who commits a tort is personally liable for his actions and cannot seek refuge in the fact that he was acting for the corporation") (citing Refrigeration Disc. Corp. v. Catino, 330 Mass. 230, 235, 112 N.E.2d 790 (1953); Coe v. Ware, 271 Mass. 570, 572-73, 170 N.E. 732 (1973)); Hawks Holding, LLC v. Kalinowski (In re Kalinowski), 449 B.R. 797, 810 (Bankr. D.N.M. 2011) ("a corporate officer or managing member of a limited liability company can act in a fiduciary capacity and be held liable for a non-dischargeable debt when that person is charged with carrying out the fiduciary obligations of the artificial business entity"), aff'd 482 B.R. 334 (B.A.P. 10th Cir. 2012); Hemelt v. Pontier (In re Pontier), 165 B.R. 797, 799 (Bankr. D. Md. 1994) ("A corporate officer, director or employee, while ordinarily not responsible for the contractual debts of a corporation, may nevertheless be held personally liable for his or her own fraudulent conduct committed on behalf of the corporation which causes injury to another.").

2

When work on the project had not begun nearly a month after she had provided the Debtor with the Initial Deposit, Matthews became concerned. According to Matthews, she "made several inquiries about the $101,020.00 deposit . . . . She asked Nealon to open an escrow account so she could track the deposit and use of deposit funds. After several requests, Nealon finally complied with Matthew's request and opened an escrow account on June 27, 2011." Arbitration Post-Hearing Brief 8-9 ¶ 16, Complaint Exhibit A, July 18, 2014, ECF No. 1. The Debtor did, indeed, open a separate account on June 27, 2011, into which he transferred an amount essentially equal to the Initial Deposit (the "Matthews Account"). Matthews later discovered, however, that the Initial Deposit had been held in the Debtor's general business account from May 26, 2011 through June 27, 2011, and that the Debtor had used nearly $50,000 of the deposit to pay various expenses, some or all of which were wholly unrelated to the Matthews project. Matthews says that this pattern of using her payments for expenses unrelated to the Matthews project continued for many months thereafter; that is, while her ongoing payments were deposited into the Matthews Account, the Debtor continued to withdraw substantial amounts of money from that account for matters having no relationship to the project. By September of 2011, the Matthews Account was essentially drawn dry and (according to Matthews, against her express direction) the Debtor thereafter deposited Matthews's payments into a general operating account.

The original contract price was $673,463.75 and was eventually increased up to $743,211.79. By May of 2012, Matthews had paid the Debtor $639,197.04, the project was not complete and completion was substantially overdue. Unhappy with this state of affairs, Matthews asked the Debtor not to return. Apparently, the Debtor was equally as

unhappy with his termination. CNB initiated an arbitration action against Matthews seeking recovery of additional amounts allegedly due, and Matthews counter-claimed for damages on account of the Debtor's alleged breaches of contract, including overcharges on invoices and incomplete and faulty work.

After a full hearing, the arbitrator ("Arbitrator") issued a written decision (the "Arbitration Award"), which was mailed to the parties on April 1, 2014. In his decision, the Arbitrator wholly rejected the Debtor's and CNB's monetary demands, and instead found in favor of Matthews. His written findings noted poor workmanship and management of sub-contractors, which resulted in substantially defective and incomplete work that remained outstanding. The Arbitrator found that Matthews's actual losses – "calculated on the amount of additional money that [Matthews] has to expend to correct [the] construction errors" – amounted to $281,265.91. With the addition of arbitration fees, the Arbitration Award totaled $285,752.86.

While most of the Arbitration Award findings focused on the defective and substandard work performed by CNB and the Debtor, the Arbitrator also made the following statement:

> . . . [The Debtor] was given $101,020 deposit by Theresa Matthews. It was given with the understanding that an **ESCROW ACCOUNT** would be opened with said funds.

Arbitration Award, Complaint Exhibit C (emphasis in original).

On April 9, 2014, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. On Schedule B (both as originally filed and as later amended) and in the Statement of Financial Affairs, he indicated that he is the owner of CNB, described as a "contracting business" with no other employees or shareholders. On Schedule F, he

4

listed Matthews as a creditor holding an unsecured claim in the amount of $281,265.91, which he describes as "Arbitration Award-Disputed Claim." He further disclosed in the Statement of Financial Affairs that a collection proceeding filed by Matthews was pending in state court.

On July 18, 2014, Matthews timely commenced an adversary proceeding objecting to both the discharge of her particular claim and to the Debtor's discharge in its entirety. Through Counts I and II of the Complaint, Matthews objects to the dischargeability of her claim under §§ 523(a)(2)(A) (as a debt incurred by fraud or misrepresentation) and (a)(4) (as a debt incurred as a result of fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny), respectively.[4]

Thereafter, the Debtor and Matthews filed their respective motions under consideration here. Central to both the Motion for Judgment on the Pleadings and the Summary Judgment Motion is the question of whether the statement in the Arbitration Award referencing an "escrow account" is binding on the parties and this Court in the present nondischargeability action.

II.     POSITIONS OF THE PARTIES

Matthews's argument is simple. Because, as the Arbitrator found, the "parties agreed" that the initial $101,020.00 deposit "would be placed in escrow pending [the Debtor's] performance of work on the project," the Debtor "owed Matthews a fiduciary obligation and assumed a position of trust with respect to said escrow funds." Pl. Opp. 2,

---

[4] In Count III, Matthews objected to the Debtor's discharge in its entirety pursuant to § 727(a)(4)(A) (on account of a false oath made in connection with the case); however, that claim has since been dismissed.

5

Dec. 12, 2014, ECF No. 26.  The Arbitrator's finding that an escrow account was established is binding in the present proceeding, according to Matthews, and the undisputed use of the funds for matters other than the Matthews project constituted either (or both) defalcation while acting in a fiduciary capacity and embezzlement under § 523(a)(4).

The Debtor maintains, however, that the Arbitrator's characterization of the Matthews Account as an escrow account is *not* binding on this Court.  First, he argues, the Arbitrator's statement was not a finding that an escrow account was actually created, but was merely a reference to the understanding of Matthews that an escrow account would be opened.  Next, the Debtor says that even if the Arbitrator did find that an escrow account was opened, that finding has no preclusive effect in the current action because that finding was not essential to the Arbitrator's judgment, which was instead premised solely on damages caused by the Debtor's negligence and shoddy workmanship.

But in his Motion for Judgment on the Pleadings, the Debtor goes even further, maintaining that this entire action should be dismissed and judgment entered for the Debtor because Matthews has not stated a plausible claim for nondischargeability under §§ 523(a)(2)(A) or (a)(4).  The Debtor characterizes the claims asserted by Matthews as entirely dependent upon her assertion that the Initial Deposit was placed in an escrow account – an assertion that the Debtor says is devoid of any factual basis.  The Debtor maintains that the funds deposited by the Debtor into the Matthews Account did not create an "escrow account."  In support of this contention, he refers to the contract between the parties as referencing only an initial deposit; it did not contain an escrow agreement or contain any contractual limitations on how the funds could be spent.  Accordingly, the

6

Debtor contends, there is no factual basis for Matthews's asserted belief that an escrow account was created, that it was never the Debtor's intention to do so, and that this version of the truth is best evidenced by the language of the contract between the parties. Therefore, because the Debtor concludes that Matthews has failed to sufficiently plead the existence of an escrow agreement, which forms the basis for all of her remaining claims, the adversary proceeding must be dismissed.

III.    DISCUSSION

    A.    **The Summary Judgment Motion**

        1.    Summary Judgment Standard

"In order to prevail on a motion for summary judgment, the moving party must show 'that there is no genuine dispute as to any material fact' and that it 'is entitled to judgment as a matter of law.'" OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co. of Canada, 684 F.3d 237, 241 (1st Cir. 2012) (quoting Fed. R. Civ.P. 56(a)). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Id. (internal citations omitted). On the other hand, "'[t]he nonmovant may defeat a summary judgment motion by demonstrating, through [ ] submissions of evidentiary quality, that a trial worthy issue persists,'" by "point[ing] to specific, competent evidence to support [that] claim." Sheedy v. Deutsche Bank Nat'l Trust Co. (In re Sheedy), 480 B.R. 204, 213 (Bankr. D. Mass. 2012) (quoting Rockwood v. SKF USA Inc., 687 F.3d 1, 9 (1st Cir. 2012)) (additional citations omitted). However, the Court will "afford no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'" In re Lacey, 480

7

B.R. 13, 29 (Bankr. D. Mass. 2012) (quoting Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) (internal citations omitted)).

### 2. Preclusive Effect of the Arbitration Award

"The ordinary rules of collateral estoppel and res judicata apply in most actions in the bankruptcy court, including adversary proceedings under § 523(a) to except debts from discharge." McCrory v. Spigel (In re Spigel), 260 F.3d 27, 33 (1st Cir. 2001). In determining the contours of preclusion principles applicable in a particular case, the bankruptcy court looks to the law of the state from which the judgement issued. Id.; see also Spagnuolo v. Brooke-Petit, 506 B.R. 1, 4 (D. Mass. 2014); M-R Sullivan Mfg. Co., Inc. v. Sullivan (In re Sullivan), 217 B.R. 670, 674 (Bankr. D. Mass. 1998). Accordingly, to determine the preclusive effect of the Arbitration Award, the Court must look to Massachusetts preclusion law.

The Massachusetts Supreme Judicial Court has held that "it is appropriate to give issue-preclusive effect to arbitration awards where the 'arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings.'" Pierce v. Morrison Mahoney LLP, 897 N.E.2d 562, 573, 452 Mass. 718 (2008) (quoting Miles v. Aetna Cas. & Sur. Co., 589 N.E.2d 314, 317, 412 Mass. 424 (1992); Bailey v. Metropolitan Property & Liab. Ins. Co., 505 N.E.2d 908, 910 (Mass. App. Ct. 1987); Restatement (Second) of Judgments § 84 comment c (1982)). Neither party has alleged that preclusion principles do not apply to the Arbitration Award, and the Court finds it appropriate to apply those principles here.

Under the Massachusetts law of collateral estoppel (or "issue preclusion"), where a particular issue is "actually litigated and determined by a valid and final judgment, and

8

the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or different claim." Jarosz v. Palmer, 766 N.E.2d 482, 487-88, 436 Mass. 526 (2002). Put another way:

> For an issue to receive preclusive effect in a later proceeding under Massachusetts law, the following four elements must be present: (1) the issue sought to be precluded must be identical to that in the prior litigation; (2) the parties actually must have litigated the issue; (3) the judgment regarding the issue must have been binding and valid; and (4) the issue's determination must have been essential to the judgment.

Rutanen v. Baylis (In re Baylis), 217 F.3d 66, 71 (1st Cir. 2000).

The Court agrees with the Debtor that the Arbitration Award has no preclusive effect in the present action on the issue of whether the parties agreed that the Initial Deposit and subsequent payments by Matthews were to be placed in an escrow account and used only for expenses related to the Matthews project. Quite simply, any conclusion reached by the Arbitrator regarding the existence of an escrow account, as reflected in the one relevant portion of the Arbitration Award quoted above, was not essential to the Arbitration Award. It is clear from the award that the Arbitrator based his decision on the Debtor's negligence and poor workmanship, and not on any particular claim that funds from an escrow account were misused. Indeed, the Arbitration Award specifically states that the amount of damages awarded to Matthews was not based on the amount of any particular unauthorized withdrawal(s), but rather "on the amount of additional money that [Matthews] has to expend to correct [the] construction errors."

Absent a preclusive finding that an escrow account was created and misused by the Debtor – an allegation that underpins the Summary Judgment Motion filed by Matthews – there remains a disputed issue of fact regarding the parties' intentions with respect to the Initial Deposit, later payments by Matthews, and the circumstances under

9

which those funds could be used. And because that highly material issue of fact remains to be determined, the Court must deny the Summary Judgment Motion.

For the reasons that follow, however, the Court does not agree with the Debtor's contention that Matthews has failed to adequately plead claims under §§ 523(a)(2)(A) and (a)(4). Although her Summary Judgment Motion hinged on the preclusive effect of the Arbitrator's finding that an escrow account existed, the Complaint and exhibits attached thereto contain allegations sufficient to state claims for nondischargeability under §§ 523(a)(2)(A) and (a)(4), regardless of whether the Arbitration Award's statement has preclusive effect in this proceeding.

### B.     The Motion for Judgment on the Pleadings

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) – made applicable to this bankruptcy proceeding by Federal Rule of Bankruptcy Procedure 7012(b) – is essentially treated as a Federal Rule 12(b)(6) motion seeking dismissal for failure to state a claim. Judgment on the pleadings under Rule 12(c) should be granted to a defendant only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Curran v. Cousins, 509 F.3d 36, 43 (1st Cir. 2007) (quoting Rivera–Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir.1988); George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 553 (2d Cir.1977)). In determining a motion for judgment on the pleadings, the Court may look to the pleadings as a whole, including exhibits incorporated into the complaint. Id. And "[b]ecause such a motion calls for an assessment of the merits of the case at an embryonic stage," the court does not resolve contested factual matters, but rather draws all inferences in favor of the non-moving party. R.G. Fin. Corp.

v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006) (citing Rivera–Gomez v. de Castro, 843 at 635; 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed.2004)).

Just as the existence of an escrow account formed the essential basis for the Summary Judgment Motion, the Debtor's Motion for Judgment on the Pleadings similarly relies on one basic premise: the alleged lack of any factual basis pled by Matthews to support her claim that an escrow account *was* created. Just as the Summary Judgment Motion rose and fell on its narrow base, so the Motion for Judgment on the Pleadings must fail, because the pleadings contain sufficient factual allegations to support Matthews's claims for relief.

The Debtor would have the Court interpret the pleadings as alleging the existence of an escrow account based *solely* on the statement in the Arbitration Award quoted above. And, having found that that statement has no preclusive effect here, the Court should dismiss the Complaint on grounds that the contract between Matthews and CNB refers to the Initial Deposit only as a "deposit," without reference to any restrictions on its use by CNB or the Debtor. But in the post-hearing arbitration brief attached to the Complaint, Matthews clearly alleges that the Debtor and Matthews *orally* agreed to create an escrow account to hold the deposit and future payments.

Under Massachusetts law, an escrow agreement need not be reduced to writing, but may be an oral agreement between the parties, later enforceable against the parties for its breach. See Zang v. NRT New England Inc., 933 N.E.2d 694, 698 (Mass. App. Ct. 2010) ("The escrow agent need not sign an escrow agreement in order to be bound by the instructions of the principals to the transaction.") (citing Matter of Hilson, 863 N.E.2d

11

483, 492, 448 Mass. 603 (2007) as an "example of the rule that an escrow holder need not sign a written escrow agreement in order to assume the fiduciary obligations of an escrow agent"); Zichelle v. Parigan, 22 Mass. L. Rptr. 125, *7 (Mass. Super. Dec. 22, 2006), aff'd Zichelle v. Zizza, 888 N.E.2d 387 (Mass. App. Ct. 2008). The factual allegation that the parties reached an oral agreement regarding the disposition of funds paid by Matthews is sufficient, taken with the other allegations in the Complaint and associated documents and pleadings, to state claims for nondischargeability of the debt owed by the Debtor to Matthews under §§ 523(a)(2)(A) and (a)(4).

1. Section 523(a)(2)(A): Fraud

Section 523(a)(2)(A) excepts from discharge a debt "for money . . . to the extent obtained by-- (A) false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). In order to establish nondischargeability of a debt under this section:

> a creditor must show that (1) the debtor made a knowingly false representation, (2) the debtor intended to deceive, (3) the debtor intended to induce the creditor to rely upon the false statement, (4) the creditor actually relied upon the misrepresentation, (5) the creditor's reliance was justifiable, and (6) the reliance upon the false statement caused damage.

Spigel, 260 F.3d at 32 (citing Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997)). Intent to deceive need not be (and seldom is) proven by direct evidence, but may be inferred from the totality of the circumstances, Palmacci, 121 F.3d at 789, including the debtor's conduct subsequent to the alleged fraud or misrepresentation, Aoki v. Atto Corp. (In re Aoki), 323 B.R. 803, 815 (B.A.P. 1st Cir. 2005) (quoting Williamson v. Busconi, 87 F.3d 602, 603 (1st Cir. 1996)).

But the misrepresentation must have been in connection with the incurrence of the debt. If the alleged misrepresentation concerns an intent to perform a promise in

12

Document      Page 13 of 18

exchange for money, then "[i]f, at the time he made his promise, the debtor did not intend to perform, [ ] he has made a false representation (false as to his intent) and the debt that arose as a result thereof is not dischargeable (if the other elements of § 523(a)(2)(A) are met)." Palmacci, 121 F.3d at 787.  However, if the debtor *did* intend to perform "at the time he made his promise, but subsequently decided that he could not or would not so perform, then his initial representation was not false when made." Id.

It is unclear whether at the time Matthews gave the Initial Deposit to the Debtor they had an understanding that it would be placed in an escrow account or would be used solely in connection with expenses related to the Matthews project as Matthews claims. But the Court need not resolve that factual matter at this stage in the game.  Taking Matthews's allegations as a whole, the pleadings state a plausible claim that the Debtor took money from Matthews (either (or both) the Initial Deposit and subsequent payments) having promised to use those funds for particular purposes but having no intent to actually do so.  Matthews buttresses her claim of fraudulent intent by pointing to allegedly false invoices presented to her throughout the project to justify the draws against her payments. She states that she relied on the Debtor's misrepresentations in continuing to make progress payments and that she was ultimately damaged by the misrepresentations, as she would not have continued to finance the project had she known of the actual use to which her funds were put.  These allegations are sufficient to state a claim for nondischargeability of some portion of the debt owed by the Debtor to Matthews to the extent incurred by fraud or misrepresentation, pursuant to § 523(a)(2)(A).[5]

---

[5] See, e.g., Jones v. Dawson (In re Dawson), 507 B.R. 348 (Bankr. D. Utah 2014) (home contractor's presentation of false invoices purporting to request payments on account of particular phases of project, then use of funds for purposes other than project amounted to fraud within the meaning of § 523(a)(2)(A); McCain v. Fuselier (In re Fuselier), 211 B.R. 540 (Bankr. W.D. La.

2. Section 523(a)(4): Defalcation of Fiduciary Duty

Section 523(a)(4) excepts from discharge any debt acquired "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). To establish nondischargeability under § 523(a)(4)'s fiduciary defalcation provision, a creditor must establish both that the debtor acted within a fiduciary capacity and that the debtor's action constituted a "defalcation" within the meaning of the Bankruptcy Code. See Raso v. Fahey (In re Fahey), 482 B.R. 678, 689 (B.A.P. 1st Cir. 2012); Taatjes v. Maggio (In re Maggio), 518 B.R. 179, 186 (Bankr. D. Mass. 2014).

It is well settled that:

> [f]ederal law generally controls who is considered a fiduciary for purposes of § 523(a)(4), though state law is relevant to determining whether a trust relationship exists. A debtor will be considered a fiduciary for dischargeability purposes if the debtor is a trustee under either an express or technical trust. A technical trust is one imposed by statutory or common law and will exist where the statute (1) defines the trust res, (2) identifies the trustee's fiduciary duties, and (3) imposes a trust prior to and without reference to the wrong that created the debt.

A.J. Rinella & Co., Inc. v. Bartlett (In re Bartlett), 397 B.R. 610, 619 (Bankr. D. Mass. 2008) (citations omitted); see also Greene v. Mullarkey (In re Mullarkey), 410 B.R. 338, 350-51 (Bankr. D. Mass. 2009).

The existence of an escrow agreement between the Debtor and Matthews would arguably give rise to a technical trust under Massachusetts law, creating the type of

---

1997) (home contractor's debt to homeowners was nondischargeable under § 523(a)(2)(A); his promise to use homeowner's payments only for costs of the homeowner's construction project was false when made); Galvin v. Cole (In re Galvin), 164 B.R. 947 (Bankr. N.D. Ohio 1993) (same); Fensick v. Segala (In re Segala), 133 B.R. 261 (Bankr. D. Mass. 1991) (same); see also Sharfarz v. Goguen (In re Goguen), 691 F.3d 62, 69 (1st Cir. 2012) ("transaction" was not just the original contract signing, but included the creditor's "staying the course, allowing [the debtor] to proceed with [construction work] and continuing to pay [the debtor] even after [the debtor] repeatedly lied to him").

14

fiduciary obligation encompassed by § 523(a)(4) of the Code.  Under Massachusetts law, "[a]n escrow agreement consists of the delivery of money . . . by one party and a promise by the other to hold it until the performance of a condition or the happening of a certain event."  Zang, 933 N.E.2d at 698.  "An escrow agent owes a fiduciary duty to both parties to the escrow agreement," that duty being the obligation to dispose of deposited funds *only* in accordance with the "express or implied authority of the depositor."  Id. at 699 (quoting Kaarela v. Birkhead, 600 N.E.2d 608, 610 (Mass. App. Ct. 1992)).  "The escrow agent, therefore, must strictly follow the instructions of the parties to the transaction."  Zang, 933 N.E.2d at 699.

Accordingly, the allegation that the parties orally agreed that the Debtor would create an escrow account to hold funds received from Matthews sufficiently states a claim that the Debtor was acting in a fiduciary capacity with respect to those funds within the meaning of § 523(a)(4).

Matthews also sufficiently alleges facts to support a claim that the Debtor's actions with respect to her funds and the escrow account amounted to a "defalcation" within the meaning of the Code.

> "Defalcation" in § 523 (a)(4) requires a breach of fiduciary duty and must mean something other than "fraud" and different from willful and malicious injury. Rutanen v. Baylis (In re Baylis), 313 F.3d 9, 17-18 (1st Cir. 2002).  Notwithstanding defalcation's broad dictionary meaning, not every default, however innocent, will suffice.  A defalcation must involve either (i) moral turpitude, bad faith, or other immoral conduct, or (ii) in lieu of these, an intentional wrong, which includes not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent, such as where the fiduciary consciously disregards, or is willfully blind to, a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. Bullock v. BankChampaign, N.A., -- U.S. --, 133 S.Ct. 1754, 1759, 185 L.Ed.2d 922 (2013).  That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its

disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." Id. at 1760.

Reiss v. McQuillin (In re McQuillin), 509 B.R. 773, 788 (Bankr. D. Mass. 2014); see also Maggio, 518 B.R. at 187; Bartlett, 397 B.R. at 620-21.

Matthews alleges that the Debtor not only used the escrowed funds for purposes at odds with the parties' agreement, but did so with duplicitous intent. She claims not only that the Debtor misrepresented his intent to use the funds for the Matthews project, but that he subsequently repeatedly misrepresented his use of the funds through false invoices. Accordingly, the Court finds that Matthews has also sufficiently pled the Debtor's defalcation, which defalcation while acting in a fiduciary capacity may give rise to a finding of nondischargeability under § 523(a)(4).

        3.        Section 523(a)(4): Embezzlement

Even if Matthews cannot establish that the Debtor was bound by an agreement to hold her funds in escrow, she has further pled sufficient facts to support a claim of embezzlement under § 524(a)(4). "Embezzlement does not require the existence of a fiduciary relationship." Farley v. Romano (In re Romano), 353 B.R. 738, 765 (Bankr. D. Mass. 2006). Embezzlement under § 523(a)(4) is "the fraudulent conversion of property of another by one who is already in lawful possession of it." Sherman v. Potapov (In re Sherman), 603 F.3d 11, 13 (1st Cir. 2010). "Embezzlement accordingly requires proof that (i) property in the perpetrator's lawful possession but (ii) belonging to another (iii) was appropriated by the perpetrator in a manner inconsistent with the property rights of the other and the scope of his or her authorization to deal with the property (iv) with fraudulent intent." McQuillin, 509 B.R. at 785; see also Lento v. Marshall (In re Marshall), 497 B.R. 3, 12 (Bankr. D. Mass. 2013); Lacourse Builders, LLC v. D'Anello (In re D'Anello), 477

16

B.R. 13, 26 (Bankr. D. Mass. 2012). "The essence of the common law concept is knowing use of entrusted property for an unauthorized purpose . . . ." Sherman, 603 F.3d at 14.

Here, Matthews has sufficiently alleged that the Debtor was entrusted with funds for a specific purpose and that he was rightfully in possession of the funds. As discussed above, Matthews has alleged facts to support her contention that the Debtor used the funds for purposes other than those for which they were intended and entrusted, and has provided facts indicating the Debtor's fraudulent intent. As to the remaining element – namely, whether the funds in the Debtor's possession were really property "belonging to another" – Matthews points to the arbitration proceeding transcript attached to the Complaint where, in response to the question whether he "believed" funds in the Matthews Account were his, the Debtor responded, "No."[6] Accordingly, and although far from conclusive, these facts pled by Matthews are sufficient to state a claim for nondischargeability on account of embezzlement under § 523(a)(4).

IV.    CONCLUSION

For all the foregoing reasons, the Court holds that the Arbitration Award has no preclusive effect on the issue of whether the parties intended that funds given to the Debtor by Matthews were to be placed in an escrow account. Accordingly, the Summary Judgment Motion, as premised on the alleged preclusive effect of the Arbitrator's statement, must be DENIED. However, the Court finds that Matthews has pled facts sufficient to support her claims under §§ 523(a)(2)(A) and (a)(4). Accordingly, the

---

[6] And at least one bankruptcy court has found that funds required to be placed in a separate account for payment of specific construction expenses may constitute "property of another" for purposes of finding embezzlement under § 523(a)(4). See Stello v. Aikin (In re Aikin), 2008 WL 2856697, *8 (Bankr. D.C. July 21, 2008).

17

Debtor's Motion for Judgment on the Pleadings must also be DENIED. Separate orders in conformity with this Memorandum shall issue forthwith.

DATED: July 2, 2015

By the Court,

_____
Henry J. Boroff
United States Bankruptcy Judge